## NORTHWESTERN FUEL COMPANY v. CENTRAL LUMBER & COAL COMPANY.[1]

February 11, 1910.

Nos. 16,338—(171).

**Plaintiff Not Entitled to Judgment Non Obstante.**

It does not conclusively appear from the evidence that the coal in question was ordered by respondent at whatever the general market price might be on the first of the following month, and appellant was not entitled to judgment notwithstanding the verdict.

**Letter to Agent Inadmissible.**

A letter written by appellant to its agent, the contents of which were not communicated to respondent, was not admissible in evidence.

Action in the district court for Ramsey county to recover $757.95, balance claimed to be due on account of coal sold and delivered by plaintiff to defendant during April, 1906. The defendant in its answer alleged a sale under an express agreement at the price of $6 per ton and payment in full. The reply denied all other allegations of the answer, except the sum paid. The case was tried before Hallam, J., and a jury which returned a verdict in favor of defendant. From an order denying plaintiff's motion for judgment notwithstanding the verdict or for a new trial, it appealed. Affirmed.

*P. J. McLaughlin* and *A. E. Boyesen,* for appellant.

*Clapp & Macartney,* for respondent.

LEWIS, J.

Appellant was a dealer in coal at the city of Chicago during the years 1905 and 1906, and respondent was a coal and lumber dealer at Dubuque, Iowa. During 1906 respondent purchased large quantities of coal from appellant, and this action was brought to recover the balance claimed to be due for shipments made during April and up to May 5. The parties had dealings in 1905, and coal was then sold

[1]Reported in 124 N. W. 981.

at the regular April market price of $6 per ton. The negotiations for the April, 1906, shipments consisted almost entirely of correspondence, although there was oral testimony which throws some light on the subject. The trial court was of opinion that neither party had made out a conclusive case, and submitted the question to the jury to determine whether the price was $6.50 per ton, as claimed by appellant, or $6, as contended by respondent. The jury returned a verdict for respondent, and appellant submits, for the consideration of this court, that the evidence conclusively shows that the contract price was $6.50 per ton, and that its motion for judgment notwithstanding the verdict should have been granted.

The correspondence resulted in a meeting between appellant's representative, Mr. Lemmon, and Mr. Johnson, secretary of respondent company, at Dubuque, on the ninth and tenth of March. The result of these meetings was that Mr. Lemmon gave Mr. Johnson to understand that an order for April shipments could not be filled at $6 per ton, and Mr. Johnson emphatically told Mr. Lemmon no coal would be ordered except on the basis of $6. Thereupon Mr. Lemmon suggested that he enter a so-called tonnage booking for April shipment, leaving the price undetermined, and explained that this was for the purpose of giving respondent an early shipping date in case the contract should be closed.

On March 16 respondent sent appellant the following wire: "Have you booked our order anthracite coal per our conversation with your Mr. Lemmon?" Replying to which appellant wired: "Have booked your order, with understanding we were to advise you as soon as price for April shipment was fixed. Nothing definite known yet"—and confirmed the same with letter of the same date, stating: "We find on investigation that your order was entered from 1,500 to 1,600 tons anthracite coal for April shipment, our Mr. Lemmon explaining in filing the order with us that you would write us prior to April first should any better terms be offered to you than those we granted last season; also asking that we advise you as soon as the price for April shipments is fixed. * *. * We should like, however, to have your specifications, and assure you that we will be in a position

to do as well by you in the matter of price and terms as any other shipper."

Nothing further occurred until March 29, when respondent sent the following letter to appellant: "In confirmation of the order entered by your Mr. Lemmon, we herewith inclose orders No. 2828 to 2890, inclusive, with the exception of 2886 and 2887, for shipment to our various yards on the basis of last year's arrangement. We would like to have these orders shipped as near the close of April as possible, except those on which we have specified shipment to be made at an earlier date." Also the following order: "Please ship to Nora Lumber Co., Nora, Ill., via I. C., during April. Price f. o. b. at prices named in our order No. 2867. * * * " To this letter and inclosure appellant replied on March 30: "We note you wish these orders shipped as late in April, but we would like to ask if you cannot waive this restriction, leaving it to us to hold the orders as long as we are able to. * * * We are accepting all orders with the understanding that we will make every effort possible to complete them in the month of April, but are not in a position to guarantee it." March 31 respondent answered, stating that the matter would be left entirely in appellant's hands, to hold the orders as long as possible, and still have shipments made in April. This closed the negotiations, and the March twenty-ninth order was filled on various dates in April, and also on the second, third, fourth and fifth of May, which included all the shipments in controversy.

During the April shipments invoices were mailed to respondent from time to time, from which it appeared that the coal was billed at $6.50 per ton. These invoices were received by respondent without protest until May 11, when it received a credit memorandum of $41.24 rebate, at the rate of forty cents per ton, on the four cars shipped in May. Respondent wrote: "We inclose herewith copy of letter received this morning from your St. Paul office, which we are at a loss to understand, in view of the fact that our orders were placed on the basis of last year's arrangement. We shall therefore be pleased to have you take this matter up with them and arrange for proper credit memorandum covering all shipments on the orders

which accompanied our letter of March 29." It was undisputed that the current market price during March, 1906, at the time these negotiations were conducted, was $6.50 per ton, and that it had been customary on or about the first of April of each year to make a reduction of fifty cents per ton. This had been done in 1905 and prior years.

From a consideration of all the evidence, documentary and oral, it conclusively appears that until receipt of respondent's letter of March 29 appellant had persistently and consistently maintained its position that the price for such coal as respondent might order for April shipment would be the general market price as the same should be determined on the first of April following. Although appellant's answer to the wire of March 16 was somewhat indefinite, fairly construed, in view of what had taken place, it could mean only one thing to Johnson, viz., that the price was yet to be fixed for April shipments, and up to March 29 the parties fully understood each other. Respondent had not consented to give an order upon any other basis than $6 per ton, and appellant had not recognized any order upon any other basis than $6.50, or whatever the price might be on the first of April. Such being the situation, it becomes necessary to consider carefully the letters of the twenty-ninth and thirtieth of March, and the subsequent conduct of the parties.

In the letter of March 29 respondent authorized the order for shipment to various yards "on the basis of last year's arrangement. * * *" Bearing in mind the position Mr. Johnson had taken that he would not buy at any higher figure than $6, this order is consistent with his former attitude. He still insisted on the basis of the 1905 deal. Upon receipt of this letter, it was perhaps natural for appellant to assume that the words "basis of last year's arrangement" were intended to refer simply to the extended time of payment; but, having been fully informed that Mr. Johnson would not give the order at any other price than $6, appellant was not justified in assuming that he had changed his mind and intended to accede to appellant's demand as to the price. The element of uncertainty arose at this point. Instead of insisting, as it had in all former cor-

respondence, that all orders were taken subject to adjustment of price April 1, the reply of March 30 was silent as to price, and the coal was shipped.

The trial court submitted the issue to the jury upon the theory that the letter of March 29 constituted an order at $6 per ton, and if it was accepted and filled without protest then the contract price became $6, and submitted the question whether, in shipping the coal in response to these orders, appellant accepted the price suggested by respondent. In order to set aside the verdict it must appear conclusively that the minds of the parties met in accordance with the agreement as appellant claims it to have been. It is quite apparent that appellant accepted the order without further reference to price, believing that Johnson had concluded to accept its terms. But, if the uncertainty resulted from this omission, appellant cannot complain, provided the order was definite. Under the circumstances the question was properly one for the jury.

The coal was not to be settled for until the first of October, and although the invoices showed that the price was $6.50 per ton, under the circumstances respondent was not required to protest immediately on receiving each invoice. On the eleventh of May the matter of price was brought to his notice by reason of the forty cents per ton discount on the first four cars sent in May, and then immediately demand was made for the full amount of discount in accordance with the order of March 29. Shipments of coal continued under later contracts during the entire summer, and no settlement was made until October, at which time respondent still insisted that it was not indebted for the extra fifty cents per ton for the April shipments. This was a matter that might have been taken into consideration by the jury in connection with the other evidence in determining what the contract was; but the failure to make a protest sooner did not, of itself, constitute an estoppel, and prevent respondent from insisting on the contract as he understood it.

Error is urged in refusing to receive in evidence Exhibit H, a letter written by respondent to Mr. Lemmon, in response to his telegram inquiring about the meaning of appellant's previous telegram.

Whether the contents of the letter had been communicated to Mr. Johnson was a matter of dispute, and it was properly excluded.

Affirmed.

JAGGARD, J.,
I dissent.